```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NINA J. ALBERTS,

                        Plaintiff,                              MEMORANDUM AND ORDER
                                                                 09-CV-2162 (RRM)(LB)
        - against -

REGINALD J. LANDEAU, JR., individually and
as an employee of the New York Department of
Education,

                        Defendant.
------------------------------------------------------------X
```
**MAUSKOPF, United States District Judge.**

Plaintiff, a former New York City public middle school teacher brings this action under 42 U.S.C. § 1983 for compensatory and punitive damages as well as injunctive relief. (Second Am. Compl. (Doc. No. 22) 9.) Plaintiff alleges that her discharge from employment, and other acts by Defendant, deprived her of her rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. (*Id.*) Defendant, principal of the school where Plaintiff was employed at the time of her discharge, is sued both individually and as an employee of the New York City Department of Education ("DOE").[1] Defendant has moved for dismissal (Doc. No. 23) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons below, Defendant's motion is granted, and Plaintiff's Second Amended Complaint[2] is dismissed in its entirety.

---

[1] In her submissions, Plaintiff refers to Defendant as a New York City employee. (*See, e.g.*, Second Am. Compl. (Doc. No. 22) ¶ 1.) Defendant's municipal employer, however, is the DOE. *See Moore v. City of New York*, No. 08-CV-8879 (PGG), 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010). The Court, therefore, will construe allegations concerning Defendant's employer as allegations concerning the DOE. *Id.*; *see also Monell v. Dep't of Soc Serv.s*, 436 U.S. 658, 690 n.55 ("[O]fficial-capacity [§ 1983] suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

[2] Plaintiff's March 17, 2010 filing is styled an Amended Complaint (Doc. No. 22.), but it represents the second amendment to her initial Complaint (Doc. No. 1), which she first amended on July 23, 2009 (*see* Am. Compl. (Doc. No. 4)). The Court will refer to the March 17, 2010 filing as a "Second Amended Complaint."

**BACKGROUND**

The following facts are taken from Plaintiff's Second Amended Complaint (Doc. No. 22). Plaintiff was a tenured public middle school teacher at Middle School 216 in Queens, New York, and a member of the United Federation of Teachers, a labor union (the "Union"). (Second Am. Compl. ¶¶ 1, 9.) Defendant was the principal of Middle School 216. (*Id.* at ¶ 5.) In May 2006, Plaintiff was assaulted by a student, and she reported the assault to Defendant. (*Id.* at ¶ 8.) Believing that Defendant's response fell short of what was required under the Collective Bargaining Agreement between the Union and the DOE, Plaintiff notified the Union of Defendant's handling of the assault, and reported the assault to the police. (*Id.* at ¶ 10.)

On or about October 30, 2006, Defendant notified Plaintiff by letter requiring Plaintiff to provide the year's reading and writing plans. While Plaintiff provided those plans, Defendant advised that they were late and that Plaintiff was "guilty of misconduct." (*Id*. at ¶ 16.) A meeting was held between Plaintiff, her union representative and Defendant on November 13, 2006, at which Defendant again told Plaintiff that the submission of her reading and writing plans was untimely and "constituted a dereliction of duty." (*Id.* at ¶ 16-19.) As Plaintiff pleads, a letter was placed in Plaintiff's personnel file regarding this issue. (*Id*. at ¶ 19.)[3]

Three days after this meeting, on November 16, 2006, Plaintiff attempted to hand Defendant "grievance papers" related to the May 2006 assault. (*Id.* at ¶ 21.) Defendant "chased [P]laintiff down the school hallway," where she "escaped into the ladies room." Defendant then "caused [P]laintiff to be escorted out of the school, at which time Defendant shouted at Plaintiff, 'Get out of this school!'" (*Id.* at ¶ 22–23.) Plaintiff "understood the conduct . . . in light of the

---

[3] Defendant also advised Plaintiff that 38 students had complained in writing about Plaintiff. (Second Am. Compl. ¶ 20.)

prior course of conduct of [D]efendant . . . to constitute a summary discharge without any hearing," and Plaintiff "did not feel free to return to the school." (*Id.* at ¶¶ 24-25.)

On the same day as this incident, Defendant requested that Plaintiff be examined medically pursuant to the New York State Education Law § 2568. (*Id*. at ¶ 28.) On November 29, 2006, Plaintiff "filed a 'Line of Duty' injury report with the Education Department," citing "emotional upset and significant physical symptoms," based on "the experiences she had had with defendant Landeau and persons closely associated with him and "requested reassignment to another school." (*Id.*) In mid-December, Plaintiff's father called in sick for Plaintiff. (*Id*. at ¶ 29.)

On January 29, 2007, Plaintiff was found fit to teach pursuant to the medical examination ordered by Defendant. However, Plaintiff did not report for work in 2007. (*Id.* at ¶ 36.) In March 2007, Plaintiff filed a claim for medical insurance under her employment-sponsored policy, but learned that she was no longer covered (*Id.* at ¶ 31.) On April 30, 2007, Plaintiff "participated in an arbitration proceeding bearing upon her attendance record and was fined $7,500." (*Id*. at ¶ 33.) In September 2007, Plaintiff learned that "she had received an unsatisfactory rating for 2007" and would not receive a salary increase. (*Id.* at ¶ 36.) In April 2008, Plaintiff "learned from a union official that she had been formally discharged from the Department on December 15, 2007." (*Id.* at ¶ 37.)

On May 15, 2009, Plaintiff filed her initial Complaint *pro se* and *in forma pauperis*. (*See* Compl. (Doc. No. 1); Mem. and Order (Doc. No. 3) 1, June 30, 2009). The Court dismissed the initial Complaint *sua sponte* under 28 U.S.C. § 1915 for failure to state a claim, and granted leave to re-plead. (Mem. and Order 1, June 30, 2009.) Plaintiff filed her first Amended Complaint on July 23, 2009, naming Landeau, and an additional party, Susan Stine, as

Defendants. (Am. Compl. (Doc. No. 4).) Plaintiff retained counsel by December 10, 2009. (*See* Notice of Appearance (Doc. No. 14) 1, Dec. 10, 2009.) On March 17, 2010, Plaintiff filed a second Amended Complaint naming only Landeau as Defendant. (Second Am. Compl. 1; *see* Mem. in Opp'n to Def.'s Mot. to Dismiss (Doc. No. 27) 1.) Defendant moved to dismiss on May 5, 2010. (Mot. to Dismiss Second Am. Compl. (Doc. No. 23).)

The gravamen of Plaintiff's Second Amended Complaint, construed in the light most favorable to Plaintiff, is that Plaintiff's November 16, 2006 encounter with Defendant was either a constructive discharge, or began a sequence of events culminating in her formal discharge on December 15, 2007. (*See* Second Am. Compl. ¶¶ 40, 54; Mem. in Opp'n 1–2.) Plaintiff alleges that, in either case, she was deprived of her tenured teaching position, a constitutionally protected property interest, without due process. (Second Am. Compl. ¶¶ 40, 54; Mem. in Opp'n 1–2.)

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris*, 572 F.3d at 71

4

(citation omitted).  A complaint need not contain " 'detailed factual allegations,' " but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

**DISCUSSION**

*I.     Plaintiff's Due Process Claims*

The Fourteenth Amendment requires that state actors not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  "Property interests . . . are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  A tenured public teacher has a protected property interest in his job. *See DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 789 (2d Cir. 1999).  Therefore, a tenured teacher cannot be fired without due process. *Id.*

As discussed more fully below, Plaintiff's complaint, drafted by her attorney, is not a model of clarity; moreover, Plaintiff's memo in opposition to this motion, again written by her attorney, devotes one sole page of a four page memo and a single Supreme Court case citation to her due process claim. These concerns notwithstanding, Plaintiff's submissions are best read to allege two alternate theories of liability under the Due Process Clause. Plaintiff first claims that Defendant deprived Plaintiff of her tenured position, a property interest, without due process because his ill-treatment of Plaintiff at the November 16, 2006 encounter amounted to a summary discharge, and no hearing was held. Under an alternate "chain of events" theory, Plaintiff suggests that the November 16, 2006 encounter started in motion a chain of events culminating in Plaintiff's formal discharge in December 2007 without notice and a hearing. Under either theory, Plaintiff has failed to state a claim. Each theory is discussed in turn.

    *a. The "summary discharge" theory*

Plaintiff maintains that she was summarily discharged on November 16, 2006, when Defendant shouted at Plaintiff to "get out," chased her down the hall, and ordered the school safety officer to escort her out of the building. (*See* Second Am. Compl. ¶¶ 22–23, 36.) Plaintiff's claim fails for two reasons. First, it is wholly implausible and based on Plaintiff's own subjective and conclusory allegations. Second, Defendant's conduct, at worst, was a random and unauthorized act for which Plaintiff had available sufficient post-deprivation due process.

Plaintiff's complaint is a rambling, disjointed recitation of episodic events in Plaintiff's tenure at Middle School 216. It is replete with Plaintiff's subjective beliefs and conclusory allegations. Indeed, in pleading the critical incident that gives rise to Plaintiff's due process claim, Plaintiff states that "she understood the conduct [of Defendant on November 16, 2006], in

6

the light of the prior course of conduct of defendant Landeau in dealing with her, to constitute a summary discharge without any hearing . . . ." (Second Am. Compl. ¶ 24.) As a result, she says she "did not feel free to return to the school . . . ." (*Id*. at ¶ 25.) By her own words, Plaintiff bases her conclusion that she was summarily discharged on her own subjective beliefs and conclusory allegations. These allegations are not sufficient to meet the *Twombly/Iqbal* standard.

Moreover, Plaintiff's central allegation regarding her summary discharge on November 16 is wholly belied by the rest of her factual pleadings. For example, Plaintiff alleges that following this incident, she requested a line of duty injury leave, and that her father called in sick for her. There would be no reason to seek leave or call in sick if Plaintiff had been fired from her job. Indeed, Plaintiff pleads a plethora of additional events which, when taken as true as this Court must, clearly demonstrate that Plaintiff had not been terminated from her position.[4] Taking her Second Amended Complaint as a whole, Plaintiff's claim of summary discharge is wholly implausible.

Even if Plaintiff had pled sufficient facts to establish a summary discharge, Defendants actions would constitute nothing more than a random and unauthorized act. When a public employee is discharged by the random, unauthorized act of his supervisor, due process requires only that the employee have at his disposal "a meaningful post-deprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996). An Article 78 proceeding, under New York Law, is a constitutionally adequate post-deprivation hearing for "random, unauthorized acts" of deprivation by a state actor. *See id.* at 882 (citing cases); *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) (public school employment context); *see also* N.Y. C.P.L.R. § 7801 *et seq.* (McKinney 2010).

---

[4] They include, *inter alia*, a medical examination pursuant to state law, an arbitration proceeding related to her attendance for which Plaintiff was fined, and an evaluation for the 2007 school year.

Here, even accepting Plaintiff's characterization of the events, Defendant's conduct amounted to a random and unauthorized "de facto discharge," (Mem. in Opp'n 3), and "a pre-deprivation hearing [was] impractical." *Giglio*, 732 F.2d at 1135. Therefore, the Due Process Clause required only that Plaintiff had at her disposal an "adequate post-deprivation remedy." *Hellenic*, 101 F.3d at 881. The Article 78 proceeding is adequate in this context. *See Giglio*, 732 F.2d at 1135. It is of no moment that Plaintiff has failed to pursue an Article 78 proceeding; it was enough to satisfy due process that the State provided it. *Giglio*, 732 F.2d at 1135. For these reasons, Plaintiff's "constructive discharge" theory fails as a matter of law against Defendant in both his individual and official capacities.

        b. *The "chain of events" theory*

Plaintiff's "chain of events" theory is that the November 16, 2006 encounter was not a constructive discharge, but, instead, started a chain of events that led to Plaintiff's formal discharge over a year later, in December 2007. (*See* Second Am. Compl. ¶ 37; Mem. in Opp'n 2.) Defendant's role in the series of events culminating in the December 2007 termination, however, was limited to the November 2006 encounter. (*See* Second Am. Compl. ¶¶ 10, 13, 17, 21, 23.)

Plaintiff's allegation lacks sufficient factual content that would allow the Court to conclude that Defendant is responsible for the December 2007 discharge, and thus fails to state a claim under Rule 12(b)(6). *See Iqbal*, 129 S. Ct. at 1949. Plaintiff merely alleges that, following the encounter and thirteen months of intervening events, anonymous DOE officials terminated her without notice or a hearing, after Plaintiff failed to report for work in that interim. Plaintiff's contention that Defendant is therefore responsible for the subsequent discharge without notice or a hearing is "merely a conclusory accusation of violation of a legal standard and do[es] not

withstand the test of *Twombly* and *Iqbal*. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 192 (2d Cir. 2010); *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("[P]ersonal involvement of [the] defendant[] in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983" (internal quotation marks omitted).).[5] Plaintiff has not alleged any facts for the court plausibly to infer any connection between the November 2006 encounter and the December 2007 termination, except one "so attenuated . . . as to be absolutely devoid of merit." *Adams v. Suozzi*, 433 F.3d 220, 225 (2d Cir. 2005); *see Iqbal*, 129 S. Ct. at 1949. *Loudermill*, the only case to which Plaintiff cites in her entire Memorandum of Law, is wholly inapposite. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

   II.     *Monell*

Plaintiff appears to sue Defendant in his official capacity as well. Suits brought against government officials in their official capacity are treated as suits against the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citations omitted). Thus, where a due process claim is brought in such capacity against an individual municipal actor, Plaintiff must allege that the defendant's actions resulted from a practice, policy or custom of the municipality. *Id.*; *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Proof of a single incident of unconstitutional activity is insufficient to demonstrate the existence of a policy. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985).

Here, as noted above, Plaintiff's Second Amended Complaint is wholly devoid of <u>any</u> facts to suggest a constitutional violation, let alone that any such violation was part of a policy, custom or practice of the municipality. *See Los Angeles v. Heller*, 47 U.S. 796, 799 (1986)

---

[5] In addition, as Defendant correctly notes, New York City school principals do not have final policy making authority over employment decisions concerning teachers in their schools. (Reply Mem. 5).

(there can be no municipal liability under *Monell* if there is no underlying constitutional violation).

        III.    *Plaintiff's remaining claims*

In her Memorandum of Law, Plaintiff did not raise any arguments opposing Defendant's motion to dismiss her First Amendment claim. Accordingly, it is deemed abandoned. *See Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010). Even so, all of Plaintiff's federal claims are without merit.

Plaintiff's First Amendment claim would fail because it alleges retaliation for filing a union grievance, but filing a union grievance is not protected speech under *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 198–99, 203 (2d Cir. 2010). Plaintiff's Fifth Amendment claim is barred because "[t]he Fifth Amendment only applies to the federal government and cannot provide a cause of action for the plaintiffs' claims of deprivation of due process of law by municipal actors." *Ochoa v. City of W. Haven*, No. 08-CV-0024 (WWE), 2008 WL 4426960, at *2 (D. Conn. Sept. 26, 2008); *see Pub. Utils. Comm'n v. Pollack*, 343 U.S. 451, 461 (1952).

To the extent Plaintiff claims deprivation of a liberty interest in her reputation, the claim is dismissed for failure to allege any false statements made by Defendant concurrently in time to Plaintiff's "constructive discharge" in November 2006, or her December 2007 formal discharge. *See Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) ("stigma-plus" test). Plaintiff's requests for equitable relief are denied for failure to allege a "continuing violation of federal law" or "threat of state officials violating the . . . law in the future." *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000) (internal quotation marks omitted); *see In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 374–75 (2d Cir. 2005); *see also Ex Parte Young*, 209 U.S. 123, 155–56, 159 (1908).

*IV.  Supplemental Jurisdiction*

The Court, having dismissed all of Plaintiff's federal claims, declines to extend supplemental jurisdiction over Plaintiff's state law claims, and dismisses all state law claims without prejudice.  *See* 28 U.S.C. § 1367 (2006); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).

## CONCLUSION

For the above reasons, Defendant's motion to dismiss is GRANTED.  Plaintiff's Second Amended Complaint is DISMISSED in its entirety.  The Clerk of Court is directed to enter judgment accordingly, and close the case.

SO ORDERED.

/S/

Dated: Brooklyn, New York
       March 31, 2011

_____
ROSLYNN R. MAUSKOPF
United States District Judge